UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| GANDER MOUNTAIN COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> WORLD FINANCIAL NETWORK ) <br> NATIONAL BANK, ) <br> ) <br> Defendant. ) | Court File No._____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Gander Mountain Company ("Gander Mountain") files the following Complaint against Defendant World Financial Network National Bank ("World Financial").

### The Nature of the Action

1. World Financial provides credit card services for Gander Mountain. On June 8, 2010, World Financial announced that it will begin automatically denying Gander Mountain customers with a FICO credit score of 800 or greater a co-brand credit card (i.e., a credit card that has a Gander Mountain and a MasterCard logo and is accepted at all locations that accept MasterCard). These customers are some of Gander Mountain's best, and World Financial admits that denying them access to a co-brand credit card will create a "negative customer experience" and will damage both Gander Mountain's existing and future relationships with them. World Financial's conduct is a breach of

contract, and injunctive relief is necessary to prevent World Financial from irreparably harming Gander Mountain.

## The Parties

2. Plaintiff Gander Mountain is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. Gander Mountain is a citizen of Minnesota.

3. Gander Mountain operates the nation's largest retail network of stores for hunting, fishing, camping and marine products and accessories.

4. Defendant World Financial has its principal place of business in Columbus, Ohio and is a citizen of Ohio.

5. World Financial is an issuer of both general-purpose credit cards and private label credit cards.

## Jurisdiction and Venue

6. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are diverse of citizenship and the matter in controversy exceeds the value of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

7. A substantial part of the events or omissions giving rise to Gander Mountain's claim occurred in this judicial district. Venue is therefore proper pursuant to 28 U.S.C. § 1391(a).

## GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

### The Co-Brand Credit Card Program Agreement

8.  Gander Mountain and World Financial entered into a Co-Brand Credit Card Program Agreement on July 1, 2005 ("the Co-Brand Agreement"). A true and accurate copy of the Co-Brand Agreement is attached hereto and incorporated herein by reference as **Exhibit 1**.

9.  Thereafter, the parties executed amendments to the Co-Brand Agreement, but did not alter the key terms bearing on this litigation. The First and Second Amendments to the Co-Brand Credit Card Program Agreement are attached here to as **Exhibit 2** and **Exhibit 3**, respectively.

10.  Pursuant to the Co-Brand Agreement, the parties agreed that World Financial would issue co-brand credit cards to Gander Mountain's customers. Under the agreement, a "co-brand account" is a "general purpose open-end revolving line of credit account that may be accessed through a Credit Card established by [World Financial]" and marketed with the trade names and/or logos of Gander Mountain and a credit card association, such as Mastercard. *See* Ex. 1, p. 2.

11.  Pursuant to the Co-Brand Agreement, World Financial was required to open accounts to qualified applicants and establish credit lines for individual applicants. *See* Ex. 1, § 2.1 ("Bank shall open an Account for all qualified Applicants...."). World Financial was required to grant or deny requests for credit based upon its own established criteria.

12. World Financial's discretion to extend credit, however, was not unfettered. Rather, World Financial's discretion to extend credit was limited by the requirement that World Financial would "work in good faith with Gander Mountain to develop business strategies with respect to the issuance of Accounts which [were] intended to maximize the potential of the Program, and which [were] mutually beneficial to Gander Mountain and Bank." *See* Ex. 1, § 2.7. Moreover, World Financial was required to act in "good faith" in negotiating with Gander Mountain regarding special credit programs.

### New Accounts and Private Label Credit Cards

13. The Co-Brand Agreement was mutually beneficial to both parties when entered into. Pursuant to the terms of the agreement, World Financial would gain access to Gander Mountain customers and Gander Mountain would be able to offer its customers desired credit services.

14. As part of the Co-Brand Agreement, World Financial agreed to pay Gander Mountain $37 for each new account opened if the New Account Activation Rate was 85% or greater. This $37 payment is referred to as "the Bounty." Additionally, Gander Mountain received 80 basis points on charges made by cardholders outside of Gander Mountain stores to the accounts.

15. Gander Mountain also contracted with World Financial to create a private label credit card program. In contrast to a co-brand account, a private label program is "an open-end revolving line of credit account marketed with [only] the trade names and/or logos of Gander Mountain." *See* Ex. 1, p. 5.

16.    For numerous reasons, a credit card issued through the private label program is less valuable to a customer than a credit card issued through the co-brand program. For example, the private label program offers lower credit limits and customers earn fewer rewards on purchases made with the private label credit card. Additionally, customers who have a co-brand credit card earn 1% cash back for non-Gander Mountain purchases, such as gas or groceries. Co-brand cardholders also have online account access with the ability to manage their credit account online. Individuals with private label credit cards have neither of these benefits.

### World Financial Breaches the Agreement

17.    On or about May 25, 2010, World Financial met with Gander Mountain and requested that Gander Mountain agree to modify the Co-Brand Agreement. At that meeting, World Financial stated that it was not achieving a satisfactory economic benefit through the contractual arrangement because it was not earning profit on those accountholders who have an 800 or greater FICO credit score[1]. *See* **Exhibit 4**, slides from the World Financial Power Point presentation made on May 25, 2010.

18.    To curtail its losses, World Financial requested that Gander Mountain agree to modify the Co-Brand Agreement to remove the $37 Bounty associated with new accounts where the accountholder has an 800 or greater FICO score. Alternatively, World Financial requested that Gander Mountain agree that World Financial would not

---

[1] FICO refers to Fair Isaac and Company, the developer of software used to produce credit bureau scores.

issue co-brand credit cards to customers with 800 or higher FICO credit scores, but would instead deny those customers a co-brand credit card and only allow them to open a less desirable private label account.

19. Gander Mountain refused to modify the Co-Brand Agreement. At a meeting on June 8, 2010, World Financial threatened to impose the "alternative" solution unilaterally if Gander Mountain did not agree to the Bounty elimination.

20. Based on these threats, on information and belief, World Financial plans to implement the "alternative" scheme and begin denying co-brand credit accounts to customers with FICO scores in excess of 800 beginning July 1, 2010.

21. Based on recent history, World Financial estimates that approximately 25% of all new co-brand accountholders will have an 800 or greater FICO score.

22. World Financial admits that denying a co-brand card to Gander Mountain customers who have a FICO score of 800 or greater would create a "negative customer experience" because customers who desired a co-brand card would not receive one, and these customers would be denied other benefits of the co-branded card solely because World Financial is attempting to improve its profitability by improperly forcing qualified credit accounts into the private label card which has lower credit limits and fewer rewards.

23. World Financial correctly admits that, as a result of its decision some 25% of Gander Mountain customers that seek a co-brand credit card would be denied access to the co-brand card solely on the basis that their credit score is too favorable. These

customers, who are some of Gander Mountain's most valuable customers, will have a "negative customer experience" and may chose to end their relationship with Gander Mountain.

## COUNT I

### Breach of Contract

24. Gander Mountain realleges and incorporates by reference the foregoing paragraphs of its Complaint, as if fully set forth herein.

25. The Co-Brand Agreement is a valid and binding contract, enforceable against World Financial in accordance with its terms.

26. By refusing to extend credit to an entire category of Gander Mountain customers—those who have an 800 or higher FICO credit score—World Financial has breached the terms of the Co-Brand Agreement.

27. All conditions precedent to World Financial's performance under the Co-Brand Agreement have been satisfied by Gander Mountain.

28. As a result of World Financial's breach, Gander Mountain will sustain damage with a value in excess of $75,000.

## COUNT II

### Injunctive Relief

29. Gander Mountain realleges and incorporates by reference the foregoing paragraphs of its Complaint, as if fully set forth herein.

30. Upon information and belief, World Financial intends immediately to begin automatically denying applications for co-brand credit cards from Gander Mountain customers that have a FICO score of 800 or greater.

31. Damaging these customers' loyalty to Gander Mountain and the goodwill associated with these customers is not reparable with monetary relief. If denied a co-brand credit card, these customers will have a negative experience, damaging Gander Mountain's relationship with them and giving them an incentive to pursue credit with Gander Mountain's competitors, and giving them less reason to purchase Gander Mountain's products. Gander Mountain has no way to calculate the full harm it will experience if World Financial imposes this restriction. Therefore, Gander Mountain has no adequate remedy at law.

32. Absent the requested equitable relief, Gander Mountain will suffer irreparable injury.

33. Injunctive relief is appropriate because Gander Mountain is in jeopardy of losing some of its most valuable customers, damaging its relationship with others, and Gander Mountain will be severely and irretrievably damaged.

34. The harm that Gander Mountain will sustain absent the requested injunctive relief outweighs the harm that such relief will cause World Financial, which relates solely to its monetary obligations to Gander Mountain. In addition, Gander Mountain is willing and able to post a bond pursuant Fed. R. Civ. P. 65(c) in such sum as this Court requires to provide adequate protection.

35. The public interest in promoting the enforcement of contracts and encouraging financing to qualified consumers with the ability to pay debts will be aided by issuing this injunction, and no detriment to the public interest will be caused by issuance of an injunction.

36. There is a substantial likelihood that Gander Mountain will prevail on the merits of this case.

WHEREFORE, Gander Mountain respectfully requests that this Court enter an Order and Judgment granting Gander Mountain the following relief:

a. a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining World Financial, and its agents, servants, employees and all other persons acting under, or in concert with, or for them, from changing its prior standards for considering applications for a co-brand credit card account, and specifically prohibiting implementation of the threatened change to automatically deny Gander Mountain customers with FICO scores of 800 or greater from receiving a co-brand credit card;

b. its expenses, attorneys fees, and other costs; and

c. all other and further relief as this Court deems just and proper.

WHEREFORE, Gander Mountain respectfully requests that this Court enter judgment in favor of Gander Mountain and against World Financial granting the following relief:

a. damages in excess of $75,000 plus interest;

b. Gander Mountain's expenses, attorneys fees, and other costs of collection; and

c. such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: June 23, 2010

FAEGRE & BENSON LLP

_____
Edward T. Wahl (#15409X)
Jane E. Maschka (#0389130)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

*Attorneys for the Plaintiff Gander Mountain Company*

and

THOMPSON COBURN LLP

Dudley Von Holt
Kimberly M. Bousquet
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6000
(314) 552-7000 (fax)
dvonholt@thompsoncoburn.com
kbousquet@thompsoncoburn.com

*Of Counsel for the Plaintiff Gander Mountain Company*